FILED
2011 Aug-18 PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **BOBBY K. ANDERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:10-CV-3248-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Bobby K. Anders ("Mr. Anders") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.  He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  Mr. Anders timely pursued and exhausted his administrative remedies available before the

---

[1]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Anders was 41 years old at the time of his hearing before the administrative law judge ("ALJ"). (Tr. 184). Mr. Anders has completed high school. (Tr. 190).  His past work experiences include employment as a beer truck driver and a carpenter's helper.  (Tr. 186, 271).  Mr. Anders claims he became disabled on December 21, 2004, due to lumbar spondylosis with a history of surgery in 2003, degenerative disc disease of the cervical spine, and mild carpal tunnel syndrome.  (Tr. 264-265).

Mr. Anders filed his application for DIB benefits on May 23, 2005. (Tr. 261).[3] The application was denied by the Commissioner on July 8, 2005.  (Tr. 33).  Mr. Anders filed a timely written request for a hearing on August 12, 2005, and the hearing was held on December 12, 2006.  (Tr. 22, 25).  The ALJ concluded that Mr. Anders was not disabled and denied his application on March 5, 2007.  (Tr. 17).  The

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]  Two conflicting dates were given for Mr. Anders's filing for DIB benefits: May 23, 2005 and May 31, 2005.  (Tr. 10, 261).  The court has used the earlier date in the ALJ's opinion of July 15, 2009.

Appeals Council denied Mr. Cox's request for review, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. 3-5).  Mr. Anders filed a complaint with the court on August 17, 2007.  *Anders v. Astrue*, No. 5:07-CV-1507-KOB (N.D. Ala. Aug. 17, 2007) (Doc. 1).  The court reversed and remanded the case on June 30, 2008, for further consideration of the treating physicians' opinions and Mr. Anders's pain testimony by the ALJ.  *Anders v. Astrue*, No. 5:07-CV-1507-KOB (N.D. Ala. June 30, 2008) (Doc. 10).

In the interim, Mr. Anders also filed applications for both Title II and Title XVI SSI claims, alleging disability since March 6, 2007. (Tr. 300-01). The Commissioner denied those claims on May 8, 2007.  (Tr. 261).  Mr. Anders filed a timely written request for a hearing on May 11, 2007.  *Id.*  Those claims were still pending when the May 2005 claims were remanded by the court in June of 2008.  *Id.*  By order of the Appeals Council, the new claims were consolidated with the old claim.  (Tr. 280). The second hearing was held on May 28, 2009.[4]  (Tr. 367).  The ALJ concluded that Mr. Anders was not disabled and denied his application on July 15, 2009.  (Tr. 272). Having exhausted his administrative remedies, Mr. Anders filed a complaint on November 24, 2010, which asks this court to review the ALJ's decision.  (Doc. 1).

---

[4] This court notes that while the hearing transcript is marked May 28, 2010, it appears that this is a typographical error and that the hearing occurred on May 28, 2009.

This court has carefully considered the record and, for the reasons stated below, affirms the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal

analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5]  The Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

---

[5]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through August 4, 2011.

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)   whether the claimant can perform her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers. *Phillips*, 357 F.3d at 1239.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Anders met the insured status requirements through December 31, 2010.  (Tr. 264).  The ALJ concluded that Mr. Anders has not engaged in substantial gainful activity throughout the whole period after the onset of his disability on December 21, 2004, but did engage in substantial gainful activity for at

6

least 22 weeks in early 2005.  *Id*.  Additionally, the ALJ found that Mr. Anders had

the severe impairments of "lumbar spondylosis with history of surgery in 2003,

degenerative disc disease of the cervical spine, and mild carpal tunnel syndrome."

*Id.*  The ALJ determined that these impairments, when considered individually or in

combination, did not meet or equal one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (Tr. 265).

The ALJ evaluated Mr. Anders's residual functional capacity, and found that

he retains:

> the residual functional capacity to perform light work as defined in 20
> C.F.R. 404.1567(b) and 416.967(b) with the following restrictions:
> lifting 15 pounds occasionally and frequently lifting 10 pounds.  He can
> sit six out of eight hours, but should not sit for more than 30 minutes at
> a time.  He can stand or walk four out of eight hours, but not more than
> 20 minutes at one time.   He can occasionally use stairs, kneel, and
> crouch, but should avoid ladders, scaffolds, crawling, stooping, heavy
> vibratory machinery, unprotected heights, or extreme cold exposure.

*Id.*

The ALJ determined that Mr. Anders is unable to return to his past relevant

work.  (Tr. 271).  Factoring in the Medical-Vocational Guidelines as a framework,

and relying upon testimony from the vocational expert, the ALJ concluded that,

although Mr. Anders's exertional limitations do not allow him to perform a full range

of light work, there are a significant number of jobs in the national economy that he

could perform. (Tr. 271-72). Examples of such jobs include gate guard, ticket taker, and parking lot attendant. (Tr. 272). Accordingly, the ALJ concluded Mr. Anders was not disabled as defined by the Social Security Act, and denied both his DIB and SSI claims. *Id.*

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See id.* ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added).

Mr. Anders argues that the ALJ's decision should be reversed because "the ALJ failed to properly articulate good cause for according less weight to the opinion of the Plaintiff's treating physician, Dr. Carter, when finding that the Plaintiff was not

8

disabled." (Doc. 9 at 7). Mr. Anders also contends that the ALJ's credibility finding with respect to Mr. Anders's testimony about his symptoms was not supported by substantial evidence. (Doc. 9 at 11). After thorough review, the court finds that the ALJ's decision is due to be affirmed.

### I. THE ALJ CLEARLY ARTICULATED THE BASIS FOR, AND SUBSTANTIAL WEIGHT SUPPORTS, THE ALJ'S CONCLUSION REGARDING THE MEDICAL JUDGMENT OF DR. CARTER.

Mr. Anders argues that the ALJ "failed to properly articulate good cause for according less weight" to the medical opinion of Dr. Carter, Mr. Anders's treating physician, when finding that Mr. Anders was not disabled. (Doc. 9 at 7). In his opinion, the ALJ stated that he gave "little weight" to parts of the September 2005 Clinical Assessment of Pain form completed by Dr. Carter.[6] (Tr. 270). The ALJ found that the opinion given in that form was inconsistent with Mr. Anders's medical record and the evidence of his light work activity after the onset of his disability date. *Id*.

The Eleventh Circuit has held that substantial weight must be given to the opinion of a treating physician in determining disability. *Lewis v. Callahan*, 125 F.3d

---

[6] The ALJ noted that though "the signature on that form does not match Dr. Carter's signature in his other records," he would assume that the form does represent Dr. Carter's opinions about Mr. Anders's pain. (Tr. 270).

9

1436, 1440 (11th Cir. 1997).   The Eleventh Circuit has also explained that a physician's opinion may not be dismissed without good cause.  *Id.*  Good cause exists where the treating physician's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Id.*

Moreover, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.  *Id.* However, when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, this court will not re-weigh the evidence anew.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th. Cir. 2005) ("Where our limited review precludes re-weighing the evidence anew, and as the ALJ articulated specific reasons for failing to give [the treating physician's] opinion controlling weight, we find no reversible error.") (internal citation omitted).

The ALJ found that the Clinical Assessment of Pain form was inconsistent with other evidence in the record.  The form stated, "Pain is present to such an extent as to be distracting to adequate performance of daily activities or work" and that physical activities would cause "Greatly increased pain and to such a degree as to cause distraction from task or total abandonment of task." (Tr. 161).  Dr. Carter also

indicated on the form that "Pain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (Tr. 162). However, the records of four of Mr. Anders's treating physicians, including Dr. Carter, do not report any side effects from medication, other than one brief mention of Mr. Anders's problem with Celebrex in December of 2004. (Tr. 167). In fact, Dr. Carter's notes from May 2009 state, "Overall [Mr. Anders] is tolerating his medications fairly well," and "He reports no new problems or medication side effects." (Tr. 365).

Dr. Carter's form also states that treatments for pain "have been used quite successfully in this case." (Tr. 162). The ALJ found that, while this statement is consistent with Mr. Anders's good examinations and light work activity, it is inconsistent with the earlier statements in the form. (Tr. 270). Mr. Anders worked as a trim carpenter from December 2004 to May 2005, after the alleged onset of disability. (Tr. 329). His work required frequently lifting 10-25 lbs. and some walking, standing, sitting, and climbing. (Tr. 329-30). Therefore, the ALJ found that the first two statements indicating a high level of pain "can be given only limited weight." (Tr. 270). More specifically, they "can be given significant weight only to the extent that the claimant is not precluded from performing light work within the functional restrictions assessed by Dr. Levine at the hearing in May 2009 and set

11

forth above in the statement of residual functional capacity." *Id*.

The ALJ found that statements on the Clinical Assessment of Pain form that indicate a high level of pain and problems with medication side effects are inconsistent with Mr. Anders's previous good examinations, light work activity, and other medical records. Accordingly, he gave less weight to those portions of the pain assessment form. Therefore, the court finds that the ALJ clearly articulated the reasons for giving less weight to the opinion of Dr. Carter, a treating physician, and that those reasons are supported by substantial evidence.

## II. THE ALJ EVALUATED THE CREDIBILITY OF MR. ANDERS'S COMPLAINTS OF DISABLING PAIN AND OTHER SYMPTOMS UNDER THE APPROPRIATE LEGAL STANDARD, AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Mr. Anders argues that the ALJ "failed to properly evaluate the credibility of the Plaintiff's testimony of disabling symptoms." (Doc. 9 at 11). The ALJ found that Mr. Anders's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment. (Tr. 266). Additionally, the ALJ stated that because Mr. Anders had "given many conflicting accounts" about his 2005 gainful work activity, his "failure to be forthright about this

work activity not only casts doubt upon that work activity, but also upon any of his other allegations." (Tr. 264, 267).

In order to establish the credibility of his subjective complaints of pain and other symptoms, Mr. Anders must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). In *Wilson v. Barnhart*, the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

The ALJ found that Mr. Anders's testimony concerning his symptoms is inconsistent with his treatment records. (Tr. 266). At a hearing before the ALJ on May 28, 2009, Mr. Anders complained of dizziness and alleged that he has fallen a number of times during "the last three to four years." (Tr. 378, 381). At an earlier hearing in 2006, Mr. Anders claimed, "I stagger real bad when I try to walk and I just lose my balance a lot because of my right side," and "I usually fall two or three times

a week." (Tr. 187, 195). He also alleged, "I stagger when I walk" on a questionnaire from April 2007, but did not report the use of crutches, a cane, or any other assistive device. (Tr. 338-39). The only reports in the record of any falls were in September 2004 and March 2007. (Tr. 175, 353). In September 2004, Mr. Anders claimed his pain had started with a fall two years earlier, and in March 2007, he claimed he had slipped on some ice a month earlier, and "he [was] doing somewhat better." (Tr. 353). As the ALJ correctly stated, there is no evidence outside these two incidents in his medical record that he ever complained to his physicians of dizziness or frequent falls. (Tr. 267) One log sheet from May 13, 2003, marked Mr. Anders's gait as "unsteady," but follow-up sheets from May 20-21, 2003, mark his gait as steady. (Tr. 108, 111, 113). Additionally, Mr. Anders's examinations from June 2003 to May 2009 have consistently indicated good gait and no difficulty walking. (Tr. 106, 155, 157, 159, 163, 165, 167, 169, 173, 177, 353, 355, 365).

The ALJ also found that Mr. Anders's testimony about his sleeping problems is inconsistent with his treatment record. (Tr. 267). Though Mr. Anders testified at his hearing that he had trouble sleeping, his medical records did not show that this was a consistent problem. (Tr. 380). Mr. Anders first reported slight problems with sleep in January 2004, which improved with medication, but later that year in August, he again reported poor sleep but was not taking sleep medications at that time. (Tr.

14

125, 129, 131, 134).  There was no additional report of sleeping problems until two years later, in September 2006, when Dr. Carter recommended Mr. Anders "try some over the counter Benadryl."  (Tr. 156).  Mr. Anders again reported poor sleep in December 2006, when Dr. Carter prescribed a trial sleep aid.  (Tr. 356).  In March 2007, Dr. Carter noted that Mr. Anders was still on the sleep aid, which was "to be taken intermittently for sleep," and that Mr. Anders "states that this has worked for him."  (Tr. 353).  There was no mention of sleeping problems or medication in May 2009.  (Tr. 356).  Additionally, Mr. Anders did not consistently list a sleep aid in his lists of medication between 2007-2009.  (Tr. 326, 343, 346, 350, 351).

The ALJ found that Mr. Anders's testimony with respect to hand and arm pain is inconsistent with his treatment record.  (Tr. 267-68).  Though Mr. Anders reported onset of numbness in his right hand in November of 2001, he continued to work full time as a delivery truck driver until December of 2004.  (Tr. 145, 186).  Mr. Anders was diagnosed with mild carpal tunnel syndrome by Dr. Aggarwal in May of 2004. (Tr. 128).  However, there was no evidence in the medical record to show that Mr. Anders returned to Dr. Aggarwal for reassessment of the hand problem, as had been recommended, even though he continued to see Dr. Aggarwal into August 2004.  (Tr. 125).  Consistent with the ALJ's opinion, there is no evidence in the record that Mr. Anders had complained of hand problems to Drs. Carter or Pickett, and  Mr. Anders's

15

examinations throughout 2006 to 2009 did not show anything significant regarding the neck or arms.  (Tr. 268).   Because Mr. Anders engaged in some gainful work activity over several months in early 2005, the ALJ found that he is "able to perform light work activity" despite "any neck, arm, or hand problems." *Id*.  Additionally, the ALJ found that this conclusion was consistent with the testimony of Dr. Levine at the May 2009 hearing.  *Id*.  Dr. Levine found that there was "really no mention in the medical record of a right-handed problem" aside from the mild carpal tunnel syndrome diagnosis in May of 2005.  (Tr. 384).  Dr. Levine also stated that the carpal tunnel diagnosis would not account for Mr. Anders's symptoms.  *Id*.  Because of this and the other inconsistencies between Mr. Anders's testimony with the medical record outlined above, the ALJ found Mr. Anders's statements concerning his symptoms "not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 266).

The ALJ's credibility finding is supported by substantial evidence.  The ALJ expressed in considerable detail the reasons for finding Mr. Anders's testimony inconsistent with the medical record, specifically Mr. Anders's testimony about his dizziness, falls, sleeping problems, and hand and arm pain.  Therefore, he made a reasonable decision to find Mr. Anders's testimony not credible, and the court finds that his determination is supported by substantial evidence.

## CONCLUSION

Based upon the court's evaluation of evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision by the Commissioner will be affirmed by separate order.

**DONE** this the 18th day of August, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge